IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WENZEL O. TAYLOR,  )<br>  )<br>    Plaintiff,  )<br>  )<br>v.  )<br>  )<br>TEAM BROADCAST, LLC,  )<br>  )<br>    Defendant.  )<br>_____ ) | Civil Action No. 05-2169 (RCL) |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
<u>IN SUPPORT OF SUMMARY JUDGMENT</u>**

Defendant Team Broadcast, LLC ("Team"), through its undersigned counsel, hereby submits its memorandum of points and authorities in support of its motion for summary judgment.

## INTRODUCTION

Plaintiff Wenzel Taylor ("Taylor"), brings this action under the Americans with Disability Act ("ADA"), as amended, 42 U.S.C. §§ 12101, et seq., alleging discrimination on the basis of his alleged disability and/or perceived disability. Specifically, Taylor alleges that he was discriminated against on the basis of his alleged disability and/or perceived disability (sleep apnea) when he was terminated from his employment with Team on or about May 29, 2004.

As set forth in detail below, the undisputed material facts show that Taylor cannot establish a *prima facie* case of disability discrimination under the ADA because he did not have a disability that substantially limited a major life activity, nor was he regarded by Team as having one. Furthermore, even if Taylor could establish a *prima facie* case of disability discrimination, Team had legitimate non-discriminatory reasons for its termination of Taylor's employment

which were unmotivated by his alleged disability and there is no evidence that those reasons were pretext for unlawful discrimination.

## STATEMENT OF THE FACTS

Team adopts its statement of material facts as to which there is no dispute, filed together with this motion (cited hereafter as "SOMF"). In brief, Team hired Taylor as a master control technician in December 2003. SOMF ¶ 2. By March 2004, Taylor's supervisor Michael Marcus had observed Taylor sleeping on the job several times. SOMF ¶ 17. Because sleeping on the job was a clear violation of Team's standards of conduct, was unprofessional, and impacted productivity, Marcus issued Taylor a written warning on March 19, 2004. SOMF ¶¶ 13, 18. Shortly thereafter, concerned that Taylor's sleeping on duty rendered him unable to perform his job as a master control technician, Team put Taylor on medical leave and advised him to consult a doctor.[1] SOMF ¶ 23. Taylor saw Dr. Zonozi in early May 2004. SOMF ¶ 27. Taylor returned to work with a note from Dr. Zonozi stating that Taylor had sleep apnea and needed further sleep studies. SOMF ¶ 27. Nothing in the note stated that Taylor could not work, was limited in any way or needed accommodation. SOMF ¶ 28. Taylor himself has adamantly denied that he was ever limited by his sleep apnea or that he was ever unable to perform his job. SOMF ¶¶ 30, 33, 42. Shortly after Taylor returned from medical leave, however, Team again witnessed Taylor sleeping on the job. SOMF ¶ 37. Accordingly, Team terminated his employment for his repeated violation of Team's policy prohibiting sleeping on the job. SOMF ¶ 38.

---

[1] Taylor states that he chose to consult a doctor on his own.

2

**ARGUMENT**

I.  **SUMMARY JUDGMENT STANDARD**

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994). The plaintiff, in response to defendant's motion, must "go beyond the pleadings and by [their] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." Id. at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (internal citations omitted). "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." Williams v. Callaghan, 938 F. Supp. 46, 49 (D.D.C. 1996).[2] The adverse party must do more than simply "show that there is

---

[2] Importantly, "[w]hile summary judgment must be approached with specific caution in discrimination cases, a plaintiff is not relieved of her obligation to support her allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." Morgan v. Fed. Home Loan Mortgage Corp., 172 F. Supp. 2d 98, 104 (D.D.C. 2001) (internal citation omitted), aff'd, 1999 WL 825425, at *1 (D.C. Cir. Sept. 27, 2000)).

some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Summary judgment is not a 'disfavored procedural shortcut,' but is an integral procedural tool which promotes the speedy and inexpensive resolution of every case." Marshall, 276 F. Supp. 2d at 47 (quoting Celotex Corp., 477 U.S. at 327).

## II. TAYLOR CANNOT ESTABLISH A CLAIM OF DISCRIMINATION UNDER THE ADA.

Under the well-established procedure for resolving a claim of disability discrimination, a plaintiff may rely on inferential evidence in the absence of direct evidence of discrimination. McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The plaintiff must first, by a preponderance of the evidence, establish a *prima facie* case of discrimination. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). For adverse-action claims under the ADA, the plaintiff must show that he: (1) had a disability within the meaning of the ADA; (2) was otherwise qualified to perform the essential functions of the position with or without reasonable accommodation; and (3) was discharged because of his disability.[3] See Weigert v. Georgetown University, 120 F. Supp. 2d 1, 6 (D.D.C. 2000) (citing Swanks v. Washington Metro Area Transit Auth., 179 F.3d 929, 933 (D.C. Cir. 1999)).

---

[3] In pertinent part, the ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2)(A). However, Congress specifically limited the ADA's protection to those "qualified individuals with a disability" who, with or without reasonable accommodation, can perform the essential functions of the positions they hold. 42 U.S.C. § 12111(8).

If the employee succeeds in establishing a *prima facie* case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its action.[4] See McDonnell Douglas, 411 U.S. at 802, 804. Once both parties meet their respective burdens of production, the burden shifting scheme becomes irrelevant. See Hicks, 509 U.S. at 510. Then, the plaintiff must establish that the employer's "proffered reason was not the true reason for the employment decision," and that the plaintiff's disability was the true reason for the employment action. Id. at 508; see also Aka v. Washington Hosp. Center, 156 F.3d 1284, 1292-93 (D.C. Cir. 1998) (en banc).

### A. Taylor Cannot Establish a Prima Facie Case of Disability Discrimination

Taylor is unable to establish any of the elements of a *prima facie* case of disability discrimination and his case should be dismissed with prejudice. Taylor cannot show that he: (1) had a disability within the meaning of the ADA; (2) was otherwise qualified to perform the essential functions of the position with or without reasonable accommodation; and (3) was discharged because of his disability. Weigert, 120 F. Supp. 2d at 6.

#### 1. Taylor Did Not Have a Disability Within the Meaning of the ADA.

To establish a disability under the ADA, the plaintiff must show that he: (1) has a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such an impairment; or (3) has been regarded as having such an impairment.

---

[4] Defendant's burden is a "relatively light burden," Fuentes v. Perskie, 32 F.3d 759, 763 (3rd Cir. 1994), and it "need not persuade the Court that it was actually motivated by the proffered reasons." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). See also Hicks, 509 U.S. at 509 ("[T]he determination that a defendant has met its burden of production (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility assessment.").

See 42 U.S.C. § 12102(2)(A)-(C); Hayes v. Williams, 392 F.3d 478, 481-82 (D.C. Cir. 2004). Although Taylor has alleged both that he had a physical impairment (sleep apnea) and that Team regarded him has having such an impairment, Taylor has failed to establish that this alleged impairment had <u>any</u> affect on the major life activities that Taylor identified in his complaint – the ability to sleep and stay awake[5] – or that Team regarded him as having such an impairment.

    i.  *<u>Taylor's Temporary Impairment Did Not Substantially Limit One or More of His Major Life Activities.</u>*

  The inquiry into a claim of physical impairment consists of a two-part analysis and Plaintiff must establish both the existence of an impairment and that the impairment substantially limited one or more of his major life activities. See Kalekiristos v. CTF Hotel Management Corp., 958 F. Supp. 641, 656 (D.D.C. 1997). Under the ADA, the plaintiff "has the burden of establishing with medical evidence the existence of the alleged disability, and presenting the documentation during the term of employment, <u>not following termination</u>." Id. at 657 (emphasis added). "'Substantially' in the phrase 'substantially limits' suggests 'considerable" or 'to a large degree.'" Toyota v. Williams, 534 U.S. 184, 194 (2002). The ADA's regulations expounding on the term "substantially limits" call for consideration of the following factors: (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. See 29 C.F.R. § 1630.2(j)(2)(i)-(iii). Moreover, it is "insufficient for individuals attempting to prove disability status to merely submit evidence of a medical

---

[5] Team also takes issue with the major life activities identified by Taylor in his complaint, as it seems both implausible and illogical that Taylor's alleged impairment can substantially limit <u>both</u> his ability to sleep <u>and</u> stay awake. Compl. ¶ 4.

6

diagnosis of an impairment. Toyota 122 S.Ct. at 691-92. Instead the ADA requires those 'claiming the Act's protection…to provide a disability by offering evidence that the extent of the limitation [cause by the impairment] in terms of the own experience is substantial. Id. at 691-92. Also, "mitigating measures" like medication and devices "must be taken into account in judging whether an individual possesses a disability." Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 565 (1999); Sutton v. United Air Lines, 527 U.S. 471, 488-489 (1999) (an impairment corrected by medication or other measures does not substantially limit a major life activity).

Taylor cannot show that his sleep apnea substantially limited him in a major life activity. Most notably, even assuming *arguendo* that Taylor's diagnosis of sleep apnea and need for sleep studies could be considered an "impairment," this alleged condition was temporary in nature and did not qualify as a disability. See Toyota 534 U.S. at 194 (stressing that the "impairment's impact must be permanent and long-term"); Thompson v. Rice, 422 F. Supp. 2d 158, 170, fn 12 (D.D.C. 2006) (noting the presumption that temporary impairments do not qualify as disabilities). Taylor was first diagnosed with sleep apnea on May 5, 2004, and had not experienced any symptoms of this condition prior to that date. SOMF ¶¶ 26, 29. Indeed, Taylor indicated that he only went to see a doctor because of Mr. Marcus' accusations about his sleeping on the job. SOMF fn. 5. On June 9, 2004, after his termination by Team, Taylor was treated at a sleep clinic and fitted for a CPAP device. SOMF ¶ 39. This CPAP device resolved any symptoms that Taylor allegedly had from his sleep apnea and Taylor has not sought any additional medical treatment since June 9, 2004. SOMF ¶ 40. Taylor further acknowledges that he is no longer impaired by this condition. SOMF ¶ 41. Accordingly, Taylor's alleged impairment, and any symptoms related thereto, were completely resolved within a short duration of less than 2 months and cannot constitute a "disability" within the meaning of the ADA.

Likewise, Taylor has failed to put forth any evidence that would demonstrate the nature and severity of his alleged sleep apnea and how it affected the major life activities set forth in his complaint.[6] Quite the contrary, Taylor admits that he was not limited in any way by his sleep apnea and this impairment did not affect any of his daily or night activities or his ability to work. SOMF ¶ 42. Taylor claims that after he was initially diagnosed with sleep apnea on May 5, 2004, "I was not….in a condition where I couldn't do my job, which I never was." SOMF ¶ 31. Indeed, Taylor has stated that at the time of his appointment on May 5, 2004, he was not feeling tired or fatigued or otherwise experiencing any symptoms of sleep apnea. SOMF ¶ 26. Moreover, when Taylor returned to work on May 7, 2004, Taylor's doctor did not place him on any work restrictions or medications for his sleep apnea. SOMF ¶ 28. Therefore, Taylor has failed to present any evidence that he was substantially limited in any of his major life activities and Team is entitled to judgment as a matter of law.

To the extent Taylor alleges that he was substantially limited in his ability to stay awake, there is no evidence that his sleeping on the job was caused by his sleep apnea. The only evidence of <u>any</u> symptom that could even potentially be related to sleep apnea seems to be Taylor's repeated instances of sleeping on the job, which occurred both before and after his initial diagnosis. Taylor initially denied these allegations, claiming that he only had his eyes closed. SOMF ¶ 19. However, Taylor has subsequently admitted that he told his physician,

---

[6] As noted *supra*, Team disputes that the ability to stay awake and to fall asleep, as identified by Taylor in his complaint, can be considered major life activities. The D.C. Circuit has not decided the issue of whether sleeping is a major life activity. See Haynes 392 F.3d at 482. However, in a separate concurrence, Judge Stephen Williams, Senior Circuit Judge, questioned the premise that sleeping is a major life activity for the purposes of the ADA, noting that because sleep needs vary greatly from individual to individual, it is more appropriate to examine the effects of a plaintiff's sleep limitations on his or waking activities. Id. at 485-86. As noted above, Taylor admits that he was not limited in his daily activities or his ability to do work. SOMF ¶ 43.

8

Dr. Zonozi that he may have fallen asleep several times at work. SOMF ¶ 21. Taylor also acknowledges that his long work hours, two-hour commute, and his job, which required him to sit for long periods of time in the dark listening to an Arabic language he did not understand, caused him to fall asleep. SOMF ¶ 22. These admissions cast serious doubt at to whether it was his sleep apnea, and not the general demands of his day-to-day life, that caused his alleged fatigue. More importantly, they demonstrate that if anything, Taylor was limited in his ability to perform his master control technician work, and not foreclosed from working in a "broad range of jobs" as required by the ADA. Weigert, 120 F. Supp. 2d at 12; see also 29 C.F.R. § 1630.2(j)(3)(i) ("The inability to perform a single, particular job does not constitute a substantial limitation..."). Therefore, Taylor has failed to present evidence sufficient to permit a reasonable jury to conclude that he was "disabled" within the meaning of the ADA and cannot establish this element of his *prima facie* case.

> ii. *Taylor Was Not Regarded As Being Disabled Within The Meaning Of The ADA.*

Taylor also cannot establish that Team regarded him as disabled. Under the ADA, an individual is "regarded as having an impairment" if he or she satisfies one of three conditions: (1) a physical or mental impairment that does not substantially limit major life activities but is treated by [the employer] as constituting such limitation; (2) a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward the impairment; or (3) none of the impairments defined [as a physical or mental impairment] but is treated by [the employer] as having a substantially limiting impairment. See 29 C.F.R. § 1630.2(l)(1). In order to "fall within the 'regarded as' definition, the plaintiff must provide that the defendant considered the plaintiff's impairment to foreclose not simply a particular job, but the type of employment generally involved." Weigert, 120 F. Supp at 13. However, an

9

employee is not "regarded as disabled," however, merely because the employer acts in response to restrictions imposed by an employee's physician. Id. (citing Gerdes v. Swift-Eckrich Inc., 125 F.3d 634, 638 (8th Cir. 1997). Moreover, an employer's attempts to accommodate an employee's concerns and perceived needs do not establish that the employer regarded the employees as having a disability. Id. Additionally, the employer must not just erroneously believe that the employee has an impairment, but must believe that this impairment substantially limits his major life activities. Id. (emphasis added).

Team acknowledges that it ultimately became aware of Taylor's alleged impairment when he returned from his leave of absence with a doctor's note indicating that he was diagnosed with sleep apnea and needed sleep studies.[7] However, knowledge of an *impairment* alone does not render an employee as being "regarded as disabled." Weigert 120 F. Supp. 2d at 13; Mitchell v. National Railroad Passenger Corp., 407 F. Supp. 2d 213, 239 (D.D.C. 2005). Rather, the plaintiff must establish that the employer believed that the impairment substantially limited his major life activities. Id. As noted above, Team had no knowledge that Taylor was suffering from any impairment that substantially affected any major life activity and did not treat Taylor as such. In fact, when Taylor was first confronted about his sleeping on duty in March 2004, Taylor denied that he was sleeping at all and informed Mr. Marcus that he was not suffering from sleep apnea or otherwise having any problems with tiredness, fatigue or exhaustion.

---

[7] Taylor indicates that the only medical treatment he received for his sleep apnea prior to his termination was the May 5, 2006 examination. Pl. Dep. 109. The sleep studies at Providence Hospital and his subsequent visits with Dr. Zonozi and Dr. Shibili occurred in June 2006, after his termination from employment. Pl. Dep. 132-35. Accordingly, the May 5, 2004 doctor's note is the only relevant medical documentation for Taylor to establish that he was disabled or regarded as disabled for purposes of this disability discrimination claim. See Kalekirstos, 958 F. Supp. at 657 ("[plaintiff] has the burden of establishing with medical evidence the existence of the alleged disability, and presenting the documentation during the term of employment, not following termination."

10

SOMF ¶ 26. In addition, the medical note submitted by Taylor on May 7, 2004 merely indicated that he was diagnosed with sleep apnea and contained no information about the extent or severity of Taylor's alleged impairment or the need for any work restrictions or accommodations. SOMF ¶ 28. Indeed, Taylor told Mr. Marcus that he was feeling much better after his time off. SOMF ¶ 30. Taylor also admits that he did not discuss the specifics of his treatment with Mr. Marcus. SOMF ¶ 32. Accordingly, Taylor has failed to present evidence sufficient to permit a reasonable jury to conclude that Team regarded him as being substantially limited in any major life activity as required by the ADA.

Although Taylor was told by Mr. Marcus on or about April 27, 2004 that he needed to obtain a medical evaluation to determine whether he was suffering from a medical condition that was causing his sleeping on duty in the master control room, such action does not render Taylor as "being regarded as disabled" under the ADA. Rather, it merely demonstrates Mr. Marcus' doubts regarding Taylor's ability to perform the job of master control technician. See, e.g., Davis v. Ashcroft, 355 F. Supp. 2d 330 (D.D.C. 2005) (citing Tice v. Centre Area Transportation, 247 F.3d 506, 515 (3rd Cir. 2001)). As such, this request for medical information was proper and, "only establishes that the employer harbors *doubts* (not certainties) with respect to an employee's ability to perform a *particular* job." Tice, 247 F.3d at 515; see also 42 U.S.C. § 12112(d)(4)(B) (explicitly permitting "inquiries" as to an employee's ability to "perform job-related functions"). "Doubts" alone do not demonstrate that the employee is held in any particular regard, and as noted above, the inability to perform a *particular* job is not a disability within the meaning of the ADA. Id.; Weigert 120 F. Supp 2d at 13; Toyota, 534 U.S. at 200 ("the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with [his] specific job.")

11

Furthermore, courts have held, "[e]mployers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims." Cody v. Cigna Healthcare of St. Louis, 139 F.3d 595, 599 (8th Cir. 1998); see also Krocka v. City of Chicago, 203 F.3d 507, 514-15 (7th Cir. 2000) (holding that "steps taken to reassure an employer that an employee is fit for duty where there is a legitimate concern about an employee's ability to perform a particular job are not proof in a case such as this one that the employer regarded the employee as disabled"). Therefore, it was completely proper for Mr. Marcus to request that Taylor obtain a medical evaluation to clear up the doubts he had about Taylor's ability to perform his job as a master control technician and this action did not render him "being regarded as disabled" within the meaning of the ADA.

    2.  Taylor Was Not Otherwise Qualified Because He Could Not Perform the Essential Functions of His Position With or Without Reasonable Accommodation.

Even assuming that Taylor could establish that had a disability within the meaning of the ADA, he cannot demonstrate that he was "otherwise qualified" because he could not perform the essential functions of his position with or without accommodation. Weigert, 120 F. Supp. 2d at 6. Congress specifically limited the ADA's protections to only those disabled individuals who are "otherwise qualified" to perform the essential functions of the position with or without reasonable accommodation. To show that he is a "qualified individual with a disability," Taylor must show that a reasonable jury could find that he could perform, with or without reasonable accommodation, the essential functions of his master control technician position. 42 U.S.C. § 12111(8). "Essential functions are the central position requirements, bearing more than a marginal relationship to the job." Amariglio v. National Railroad Passenger Corp., 941 F. Supp. 173, 178 (D.D.C.1996) (citing 29 C.F.R. § 1630.2(n)). Courts defer "to the employer's judgment

as to what functions of a job are essential". 42 U.S.C. § 12111(8); accord Hirschhorn, 913 F. Supp. at 1399.

In the instant case, Taylor has failed to establish that he could perform one of the most basic essential functions of his job – the ability to stay awake. As a master control technician, Taylor was responsible for providing technical operations support to the Middle East Television Network, a fast-paced 24/7, 365 day a year news and entertainment broadcast network. SOMF ¶ 2. Therefore, it is beyond dispute that staying awake while on duty is an essential function of Taylor's job. See, e.g., Tarwick v. Hantman, 151 F. Supp. 2d 54, 62 (D.D.C. 2001). Taylor has subsequently admitted that he did in fact fall asleep several times at work. SOMF ¶¶ 21, 22. As such, Taylor cannot demonstrate that he could perform this most basic essential function of his job, with or without reasonable accommodation, since he was found sleeping on duty on multiple occasions both before and after his diagnosis of sleep apnea.

Taylor also acknowledges that he never requested nor required any accommodation of his alleged disability. SOMF ¶ 33; see Flemming v. Howard Univ., 198 F.3d 857, 861 (D.C. Cir. 1999) (underlying assumption of reasonable accommodation is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied); Evans v. Davis Mem'l Goodwill Indus., 133 F. Supp. 2d 24, 28 (D.D.C. 2000); Becker v. Gallaudet Univ., 66 F. Supp. 2d 16, 22 (D.D.C. 1999) ("[T]he ADA does not impose a general duty on an employer to provide unrequested accommodations."). Therefore, by his own admission, Taylor was unable to perform this essential function of his job without accommodation and did not request or identify any reasonable accommodation that would have allowed him to perform this function. Accordingly, Taylor has failed to present evidence sufficient to establish this element of his *prima facie* case of disability discrimination.

### III. TEAM HAD LEGITIMATE NON-DISCRIMINATORY REASONS FOR TERMINATING TAYLOR'S EMPLOYMENT.

Assuming the Court finds that Taylor is able overcome the numerous factual and legal deficiencies detailed at length above and is able to prove a *prima facie* case of disability discrimination, Team has articulated legitimate, nondiscriminatory reasons for its action. See McDonnell Douglas, 411 U.S. at 804. Taylor was an at-will employee serving a probationary period who had repeated instances of sleeping on the job. SOMF ¶¶ 4, 5. This misconduct was in clear violation of Team's policy on standards of conduct as contained in its Employee Manual. SOMF ¶¶ 11, 12. Taylor admits that sleeping on the job would be a violation of these standards of conduct. SOMF ¶ 13. This type of misconduct was also particularly serious for a master control technician like Taylor, since he was responsible for among other things, the configuring and optimizing of multiple broadcast and satellite feeds for an international news and broadcast network. SOMF ¶ 5. Despite the seriousness of this misconduct, Taylor received multiple opportunities, as demonstrated through his history of progressive discipline, to demonstrate that he could be relied upon to stay awake while at work. During February and March of 2004, Taylor was informally counseled and issued a letter of warning by Mr. Marcus about several instances where he and other supervisors observed him sleeping on the job. SOMF ¶¶ 16-18. Although Team inquired whether Taylor's behavior was caused by a medical condition, Taylor denied that he was sleeping at all and informed Mr. Marcus that he was not suffering from sleep apnea or otherwise having any problems with tiredness, fatigue or exhaustion. SOMF 19 and 26.

Team held Taylor to the same standards of conduct as any other employee. See Maddox v. Univ. of Tenn., 62 F.3d 843 (6th Cir. 1995) ("no employer is required to ignore dangerous and patently unacceptable behavior or its employees simply because that employee has a disability. An employee may not bootstrap his disease into a line of causation."); Newland v. Dalton, 81

14

F.3d 904, 906 (9th Cir. 1995) ("firings precipitated by misconduct rather than any handicap do not violate the Act."). This letter of warning reminded Taylor that sleeping on the job, and even the appearance of sleeping on the job, was not acceptable behavior and could result in disciplinary action up to and including termination. SOMF ¶ 18. Despite this clear notice of the consequences of further misconduct, Taylor was again found sleeping on the job on both May 19 and May 20, 2004. SOMF ¶ 37. Therefore, based on these repeated instances of sleeping on the job, Team decided that it had no choice but to terminate Taylor's employment during his probationary period effective May 28, 2004. SOMF ¶ 39. Therefore, Taylor's termination was not motivated in any way by his alleged diagnosis of sleep apnea but was based solely on Taylor's sleeping on the job and the overriding need to maintain appropriate standards of conduct of its employees.

### IV. TAYLOR IS UNABLE TO ESTABLISH THAT TEAM'S ACTIONS WERE MOTIVATED BY UNLAWFUL PRETEXT.

When an employer has articulated legitimate non-discriminatory reasons for its actions, the presumption raised by plaintiff's *prima facie* case is rebutted and the factual inquiry proceeds to a new level of specificity where the plaintiff must then proffer evidence that defendant's asserted reason for the action is merely a pretext for discrimination. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Johnson v. Brock, 810 F.2d 219 (D.C. Cir. 1987). In order to survive a motion for summary judgment, plaintiff must present *substantial* and *credible* evidence of discriminatory intent and demonstrate that "the [defendant's] explanation [is] a sham and…offer…additional circumstantial evidence of … discrimination." Krodel v. Young, 748 F.2d 701, 706 (D.C. Cir. 1984). Taylor cannot rely on "conclusory allegations" because this "would defeat the central purpose of the summary

15

judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999).

Taylor fails to present any evidence of discriminatory intent whatsoever. Taylor merely makes the bare conclusory assertion that Team terminated him after receiving his doctor's note indicating that he was diagnosed with sleep apnea[8]. See Exhibit D at 3 ("...I was fired from my job after bringing a note back from the doctor stating that I had sleep apnea and would be treated for it. There was no other reason."). However, even assuming such unsupported conclusions could be considered evidence of pretext, it would merely establish Team's knowledge of Taylor's alleged impairment as of May 10, 2004, a point which Team concedes. Unfortunately for Taylor, this does not demonstrate evidence of discriminatory intent. See Den Hartog v. Wasatch Academy, 909 F. Supp. 1393, 1405 (D.Utah 1995) ("[A]llowing mere knowledge of a disability to create a fact issue regarding ADA discrimination would be patently unfair to employers and allow disgruntled employees the option of 'creating' an ADA claim by simply informing their employers about their disabilities"). Therefore, because Taylor has failed to offer any evidence that Team's reasons for its termination of him were pretext for discrimination, summary judgment for Team is appropriate in this case.

---

[8] In addition, Taylor has offered no evidence that Team treated him any differently for sleeping on the job than other similarly-situated employees outside of his protected class.

16

## CONCLUSION

Based on the forgoing, Defendant Team Broadcast, LLC, respectfully requests that the Court grant judgment in its favor and dismiss Plaintiff's complaint with prejudice.

Date: December 18, 2006

Respectfully submitted,

TEAM BROADCAST, LLC

By: _____/s/_____
Jessica R. Hughes, DC Bar 468853
Eric J. Janson
SEYFARTH SHAW, LLP
815 Connecticut Avenue, NW, Suite 500
Washington, DC  20006-4004
(202) 463-2400
Counsel for Defendant Team Broadcast, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 18th day of December 2006, the foregoing Motion for Summary Judgment, Memorandum of Points and Authorities in Support of Summary Judgment, and Statement of Material Facts was sent via ECF and by Federal Express, to the following:

Wenzel Taylor
2306 Ainger Place, S.E.
Washington, DC  20020

/s/
Jessica R. Hughes, DC Bar 468853
Eric J. Janson
SEYFARTH SHAW, LLP
815 Connecticut Avenue, NW, Suite 500
Washington, DC  20006-4004
(202) 463-2400
Counsel for Defendant Team Broadcast, LLC