# Defendant Team Broadcast, LLC - Motion for Summary Judgment

# Exhibit A – Michael Marcus Declaration

### Civil Action No. 05-2169 (RCL)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WENZEL O. TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-2169 (RCL) |
| ) | |
| TEAM BROADCAST, LLC, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## DECLARATION OF MICHAEL MARCUS

1. I, Michael Marcus, make this declaration being aware of the importance of my obligation to make a truthful statement and of the penalties for perjury.

2. All statements in this Declaration are based on my personal knowledge.

3. I am over the age of 18 and competent to testify as to all of the statements made in this Declaration.

4. I am currently the Assignment Manager for Team People, LLC. Prior to holding the Assignment Manager position, I was Master Control Studio Operations Manager for Team Broadcast, LLC ("Team"), and my office is located in Washington, DC, which is where I have signed this Declaration. I was the Master Control Studio Operations Manger for Team from approximately November 2003 until July 2006.

5. In my capacity as Master Control Studio Operations Manager, in coordination with Sue Lee, Human Resources Manager, I hired Wenzel Taylor ("Taylor") on or about December 13, 2003 as a master control technician to provide technical operations support of the Middle East Television Network ("MTN"). I also served as Taylor's first line supervisor.

6.  As a master control technician, among other things, Taylor was responsible for configuring and optimizing multiple broadcast and satellite feeds for MTN, monitoring and adjusting on air signals using state of the art equipment, and monitoring and executing the playout of air materials throughout the program day according to the program log. Taylor's Deposition Exhibit No. 9 is a true and correct copy of Taylor's position description.

7.  In February and March 2004, other managers and I began observing Taylor demonstrating unacceptable conduct at work. Specifically, other managers and I observed, on at least three separate occasions in February and March 2004, that Taylor appeared to be asleep while at his video shading workstation in the master control room.

8.  On or about March 15, 2004, I spoke to Taylor about his sleeping on the job and noted that other managers had observed him asleep as well. As a result, I issued Taylor a written warning and reminded him that sleeping on the job, and even the appearance of sleeping on the job, was not acceptable behavior and could result in further disciplinary action up to and including his termination.

9.  At the time, Taylor told me that he was not asleep. Taylor stated that he only had his eyes closed and was thinking about personal things he had to do.

10. On or about April 22, 2004, I informed Taylor that management was concerned about his continued instances of sleeping on the job and the potential impact that future incidents could have on Team's operations.

11. Therefore, I instructed Taylor that he needed to make a medical appointment to determine whether there was a medical reason that was causing him to fall asleep on duty or was otherwise preventing him from performing his job as a master control technician.

12. I informed Taylor that I would approve his use of sick leave until he was able to obtain this medication evaluation.

13. As a result, I carried Taylor on a combination of sick and annual leave from approximately April 22, 2004 to May 7, 2004. A true and correct copy of Taylor's time and attendance records are attached to this Declaration as Exhibit 2.

14. On or about May 7, 2004, Taylor returned to work and handed me a note from his physician, Dr. Reer Zonozi, dated May 5, 2004, indicating that he was diagnosed with sleep apnea disorder and needed further sleep studies.

15. He also indicated to me that "he was feeling much better after some time off" and was able to resume all the duties and responsibilities of his master control technician position. A true and correct copy of my e-mail to Brad Simons, General Manager, dated May 7, 2004, reflecting this conversation with Taylor, is attached to this Declaration as Exhibit 3.

16. After our conversation, I assigned Taylor to work in the intake department, an area that Taylor had previously been assigned because the intake department was a busier atmosphere than the video shading area and I thought it would be potentially less conducive to sleep.

17. While working in the intake department, Taylor was supervised by Mr. Vernon Herald, Studio Manager.

18. Less than two weeks after Taylor's return to duty, Mr. Herald informed me that on both May 19, 2004 and May 20, 2004 he had observed Taylor asleep at his work station in the intake department for brief moments during his shift. Mr. Herald informed me that he could see Taylor's eyes closed and hear him heavy breathing. A true and correct copy of the Mr. Herald's

3

1. DC1 30184941.1

shift report documenting these observations, which I transcribed and e-mailed to Sue Lee on May 28, 2004, is attached to this Declaration as Exhibit 4.

19. As a result of Taylor's numerous and continued instances of falling asleep on duty, in direct violation of Team's policies which prohibited sleeping on the job, Brenda Elkins, Quality Control Manager, and I met with Taylor on May 28, 2004 and informed him that Team had no choice but to terminate his employment during his probationary period. A true and correct copy of my memorandum to Brad Simons, reflecting our conversation with Taylor on May 28, 2004 is attached to this Declaration as Exhibit 5.

I declare under penalty of perjury that the foregoing to be true and correct to the best of my knowledge.

Dated: December 18, 2006

_____
Michael Marcus