# IN THE UNITED STATES DISTRICT COURT
## FOT THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WENZELL TAYLOR** | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| | )    **Civil Action No. 1:05-2169 RCL** |
| | ) |
| **TEAM BROADCAST, LLC** | ) |
| | ) |
| Defendendant | ) |
| | ) |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff asks the Court to take judicial notice of the fact that plaintiff is without counsel, is not schooled in the law and legal procedures, and is not licensed to practice law; therefore, his pleadings should be read and construed liberally. Further plaintiff believes that this court has a responsibility and legal duty to protect any and all of plaintiff's constitutional and statutory rights.

Plaintiff asserts that the basis for the Defendants Motion For Summary Judgment is a ridiculously and absurd twisting of the facts and are outright blatant lies at the least. Defendant claims that it had a non-discriminatory reason for terminating Plaintiffs employment but did so only after requesting and receiving medical verification of Plaintiffs disability. The Defendants *only* reasons for termination, that the Plaintiff was an at-will employee serving a probationary period who had repeated instances of sleeping on the job which was a violation of Defendants policy on standards of conduct *is* itself the pretext for unlawful discrimination.

Not once while employed by the Defendant was the Plaintiff ever counseled, reprimanded, demoted, criticized or disciplined in any way because of the quality, knowledge or skills of his technical work performance. In fact the Director of Operations directly told the Plaintiff that he and the Engineers considered the Plaintiff *"the best man we have for the job."* Mike Marcus, the Plaintiffs supervisor himself told the Plaintiff when he inquired as to what it is he was doing wrong to be targeted with harassment, *"you aren't doing anything wrong."* The Plaintiff was considered by the staff and his colleges to be one of the more experienced technicians on the job. The Plaintiff was often asked to instruct or train other personnel in the operation of state of the art equipment including requests from and to train his supervisor Mike Marcus. And although it unfairly cannot be submitted or used as

1

RECEIVED

JAN 1 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

evidence, there is the direct admission of the Defendant Mike Marcus at the EEOC informal mediation when directly asked by the Plaintiffs former council, "Is the only reason you fired the Plaintiff is because he bought a note from the doctor stating he had sleep apnea?" the Defendant Mile Marcus responded "yes." The Plaintiff would like it known that he was not in favor of participating in an informal EEOC mediation. He only participated at the insistence of his council who thinking as an attorney and ignoring in the Plaintiffs opinion all common sense saw participating as an act of good faith. It has always been the Plaintiffs position from the moment the mediation was offered that an informal hearing would only afford the Defendants the opportunity to find out what the Plaintiffs position was and to then manufacture lies to cover their guilt. That is exactly what the proposed motion is a result of.

Because there was some initial confusion as to where this case should be tried the Plaintiff has spoken to many state and Federal government agencies as well as attorneys in Virginia and Washington, D.C. The Plaintiff has learned from these various conversations that statistics show that the courts in D.C., Virginia and Maryland have what is perceived to be a notorious reputation of *De facto standard* when it comes to dismissing ADA cases on Summary Judgments. Plaintiff believes the Defendants council is counting on this *De facto standard* to prevail in this case. That is also *one* of the reasons Plaintiff believes that EEOC did not do the formal investigation they claim was done. EEOC *is* aware that ADA cases are more than occasionally dismissed on Summary Judgments in this D.C., Maryland and Virginia area and since there is no contact with the investigator during investigations, Plaintiff believes that EEOC, in order to lighten case loads and avoid the bother of an investigation, grant a right to sue letter and let the courts handle the charges

It is therefore prayed that the Respondents Motion for Summary Judgment not be granted and that this case go to trial and the evidence and testimony be examined and judged by a jury of peers.

Date: _1 - 15 - 07_

Wenzell Taylor
2306 Ainger Pl., S.E
Washington, D.C. 20020
202-889-2989

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the **"PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT"** and a true and accurate copy of the Plaintiffs sworn **"AFFIDAVIT"** were served together by certified mail # 7005 0390 0001 1328 6548, postage prepaid, this 16th day of January 2007, upon:

Jessica R. Hughes
SEYFARTH SHAW Attorneys, LLP
815 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006-4004
Attorney for Defendant

*Wenzell Taylor*

Wenzell Taylor
2306 Ainger Pl., S.E.
Washington, D.C. 20020
Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOT THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WENZELL TAYLOR** | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| | )     **Civil Action No. 1:05-2169 RCL** |
| | ) |
| **TEAM BROADCAST, LLC** | ) |
| | ) |
| Defendendant | ) |
| | ) |

## AFFIDAVIT

In response to the Defendants Statement Of Material Facts, Plaintiff, Wenzell Taylor avers and swears that the Defendants facts are false, inaccurate and manufactured. In dispute of the Statement Of Material Facts ("SOMF") filed with the Defendants Motion For Summary Judgment, the Plaintiff admits, denies and alleges as follows:

1. Plaintiff admits to his knowledge, Team Broadcast Services LLC, is a full service television production, distribution and rights management company, but denies remaining allegations contained in statement one of Defendants facts.

2. Plaintiff admits the allegations in the first sentence of the second "SOMF", but denies the remaining allegations in the second "SOMF." Plaintiff found numerous discrepancies in the copy of his deposition before the Defendant, and did not agree or sign its "Acknowledgment Of Deponent" statement.

3. Plaintiff admits that on or about 12/13/03 he signed an employment agreement with Team that acknowledged his at-will status but for lack of memory denies the remaining allegations of the third "SOMF."

4. Plaintiff denies the allegations of the forth "SOMF." A physician did not examine plaintiff at the time of being hired by Team.

5. Plaintiff admits to the first sentence in the fifth "SOMF", but denies the remaining allegations of fifth "SOMF."

6. Plaintiff admits that technically as a Master Control Operator (MCO) he would be responsible for configuring and optimizing multiple broadcast and satellite feeds and monitoring and adjusting on air signals using state of the art equipment and monitoring and executing playback of on-air materials throughout the program day according to the program log. Plaintiff denies remaining allegations of the sixth "SOMF." Not once while employed by Team was the Plaintiff ever assigned to or did he perform the duties described in the sixth "SOMF."

7. Plaintiff admits to the first sentence in the seventh "SOMF" but denies the remaining allegations of the seventh "SOMF."

8. Plaintiff admits that in February of 2004 he was the first employee to understand and operate the Intake Department and was asked to teach other technicians how to perform the work the following week. Plaintiff denies all other allegations of the eighth "SOMF."

9. Plaintiff admits to the first and second sentences of the ninth "SOMF" but denies the remaining allegations.

10. Plaintiff neither admits, denies or remembers whether or not that on or about 1/5/04 he received a copy of the Asgard Entertainment Group Employee Manual containing various policies related to employment with Team. Plaintiff denies the remaining allegations of the tenth "SOMF."

11. Plaintiff neither admits, denies nor remembers allegations in the first sentence of the eleventh "SOMF." Plaintiff denies the remaining allegations of the eleventh "SOMF."

12. Plaintiff neither admits, denies nor remembers the allegations of the twelfth "SOMF."

13. Plaintiff admits that logically sleeping on the job could be under normal conditions considered a violation of standards of conduct. Plaintiff denies the remaining allegations of the thirteenth "SOMF."

14. Plaintiff neither admits, denies nor remembers the allegations of the first, second and third sentences of the fourteenth "SOMF." Plaintiff denies the remaining allegations of the fourteenth "SOMF."

15. Plaintiff neither admits, denies nor remembers the allegations in the first sentence of the fifteenth "SOMF." Plaintiff denies the remaining allegations of the fifteenth "SOMF."

16. Plaintiff denies the allegations of the first sentence of the sixteenth "SOMF." Mike Marcus began addressing the Plaintiff about sleeping on the job in December of 2003. Plaintiff and his colleges were directed to report to an office space each morning during the first two months of employment. There we would just sit with nothing to do but read the daily newspaper or play solitaire on a computer. Plaintiff admits Mike Marcus spoke to him a couple of times about sleeping or appearing to be sleep in that room. Just after New Year 2004 on one of those occasions Mike Marcus stated that he believed the Plaintiff was suffering from sleep apnea. Plaintiff denies the remaining allegations of the sixteenth "SOMF."

17. Plaintiff denies the allegations of the first sentence of the seventeenth "SOMF." Plaintiff admits that in late February of 2004, Mike Marcus did observe the Plaintiff with his eyes closed on one occasion during down time (at that time a forty minute wait between broadcasts). Plaintiff told Mike Marcus he was not sleep but was just thinking (with his eyes closed) about domestic obligations he had to address. Plaintiff denies the remaining allegations of the seventeenth "SOMF."

18. Plaintiff admits that on or about March 15, 2004 Mike Marcus informed the Plaintiff that a company consultant had observed and reported the Plaintiff sleeping at his workstation on the previous weekend. Plaintiff denied that it was he who had been observed sleeping if anyone because he was not on the job at that time. It was the Plaintiffs day off. That conversation was over heard by the scheduling manager Mary Ballmann who at that point entered the conversation and verified that the Plaintiff was not at the job site and that it was his day off. Mike Marcus immediately turned to his computer and re-wrote the warning making it appear that the Plaintiff had been observed in general sleeping on the job again. Plaintiff denies the remaining allegations of the eighteenth "SOMF."

19. Plaintiff denies the allegations of the nineteenth "SOMF."

20. Plaintiff denies the allegations of the twentieth "SOMF."

21. Plaintiff denies the allegations of the first sentence in the twenty-first "SOMF." Plaintiff admits he did tell Dr Shibli he had fallen asleep at work several times.

22. Plaintiff admits to allegations of the first sentence of the twenty-second "SOMF." Plaintiff also admits to the allegations of the second sentence except to add that under those conditions a person suffering from sleep apnea would easily go to sleep.

23. Plaintiff totally denies the allegations of the twenty-third "SOMF."

24. Plaintiff denies the allegations of the twenty-forth "SOMF."

25. Plaintiff denies the allegations of the twenty-fifth "SOMF."

26. Plaintiff denies the allegations of the twenty-sixth "SOMF."

27. Plaintiff denies the allegations of the twenty-seventh "SOMF."

28. Plaintiff admits to the first and second sentences of the twenty-eighth "SOMF" but denies the remaining allegations.

29. Plaintiff admits he had not experienced any symptoms of sleep apnea prior to May 2004 because he did not know what the symptoms of sleep apnea were prior to May 2004. Plaintiff denies the remaining allegations of the twenty-ninth "SOMF."

30. Plaintiff admits to the first sentence of the thirtieth "SOMF" but denies the remaining allegations of the thirtieth "SOMF."

31. Plaintiff admits to the first sentence in the thirty-first "SOMF."

32. Plaintiff admits to the first sentence in the thirty-second "SOMF" but denies the remaining allegations of the thirty-second "SOMF."

33. Plaintiff admits to the first sentence of the thirty-third "SOMF" but denies the remaining allegations of the thirty-third "SOMF."

34. Plaintiff admits to the first sentence in the thirty-forth "SOMF" but denies the remaining allegations of the thirty-forth "SOMF."

35. Plaintiff admits that the intake department is a busier atmosphere than the video shading area. Plaintiff denies he ever considered whether or not the intake department was more or less potentially conducive to sleep. Plaintiff denies the remaining allegations of the thirty-fifth "SOMF."

36. Plaintiff denies any knowledge of the allegations of the thirty-sixth "SOMF."

37. Plaintiff denies the allegations of the thirty-seventh "SOMF." In support of the Plaintiffs denial is attached Exhibit "A", a copy of the scheduled patient record from Dr. Zonozi's office showing Plaintiff scheduled in for a 1:00PM May 19, 2004 appointment and Exhibit "B" a copy of an outstanding bill due from Dr. Zonozi showing an office visit on May 19, 2004. Plaintiff also subsequently took May 20, 2004 off and returned to work on May 21, 2004 with a note, Exhibit "C", from Dr. Zonozi stating that Plaintiff had sleep apnea and needed to be evaluated and treated at a sleep clinic.

4

38. Plaintiff denies the allegations of the thirty-eighth "SOMF." Upon returning to work on the 21st of May 2004, Plaintiff was immediately assigned to the Intake department. A fast pace non stop constant receiving of multiple satellite feeds, fiber optic feeds, video and audio tapes and live studio and broadcast feeds all at the same time that must be digitally and electronically ingested into a single terminal, multi-input computer server. There is barely enough time to stand and adjust your underwear from sitting so long let alone fall asleep, which is impossible. Exactly one week later, May 28, 2004, at about 1:10PM, Mike Marcus I believe had me relieved at my workstation asked to speak to me in a conference room where another manager Brenda Elkins was waiting. Once we entered the room Mike said to me "were going to have to let you go, and you pretty much know what this is about." Plaintiff responded "no I don't and I would like to have something in writing."

39. Plaintiff denies the allegations of the thirty-ninth "SOMF." Plaintiff was diagnosed for sleep apnea on June 8th, 9th and 21st, 2004 and received a CPAP device on June 25th, 2004. Exhibit "D"

40. Plaintiff denies the allegations of the fortieth "SOMF." The CPAP machine only temporarily relives the symptoms of sleep apnea as long as it is used. Plaintiff was informed on May 31, 2004 by Tracie Thompson of Teams human resources office that he would continue to have health insurance for one month after termination. It was later discovered that Team had terminated Plaintiffs health insurance on May 29, 2004. Plaintiff had no resources to follow up or seek further treatment or diagnosis.

41. Plaintiff denies the allegations of the forty-first "SOMF." Plaintiffs CPAP airway hose is punctured and Plaintiff no longer has use of the CPAP device.

42. Plaintiff denies the allegations of the forty-second "SOMF." Plaintiff did not know before the diagnosis in June of 2004 what the symptoms and effects of sleep apnea were. So to his knowledge at that time none of his activities or abilities were considered or perceived by him to be impaired.

**Date:** _1-15-07_

Wenzell Taylor

**Wenzell Taylor**
**2306 Ainger Pl., S.E.**
**Washington, D.C. 20020**
**202-889-2989**

ESTHER N. OKAI
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires October 1, 2008

ENOKa
1/15/07

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the **"PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT"** and a true and accurate copy of the Plaintiffs sworn **"AFFIDAVIT"** were served together by certified mail # 7005 0390 0001 1328 6548, postage prepaid, this 16th day of January 2007, upon:

Jessica R. Hughes
SEYFARTH SHAW Attorneys, LLP
815 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006-4004
Attorney for Defendant

Wenzell Taylor
2306 Ainger Pl., S.E.
Washington, D.C. 20020
Plaintiff