UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WENZEL O. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-2169 (RCL) |
| | ) | |
| TEAM BROADCAST, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter comes for the Court on defendant's motion [20] for summary judgment, plaintiff's second motion [16] for court-appointed counsel, and plaintiff's motion [18] to compel production of documents.

Upon consideration of these motions, the oppositions thereto, the reply briefs, the applicable law, and the entire record herein, the Court concludes that defendant's motion [20] for summary judgment will be DENIED, plaintiff's motion [16] for court-appointed counsel will be GRANTED and plaintiff's motion [18] to compel production of documents will be DENIED as moot.

**BACKGROUND**

**I.   Facts**

In December 2003, plaintiff Wenzel O. Taylor was hired as a master control technician by defendant Team Broadcast Services LLC ("Team"), a television production, distribution, and

rights management company. (Def.'s Statement of Material Facts ("SOMF") [20], ¶ 1,2). Plaintiff was initially assigned to work in Team's intake department where he was responsible for disseminating video signals sent to the network, to reporters, editors and others. (Def.'s SOMF [20], ¶ 7, 8). Plaintiff was then assigned to work on video shading in the master control room, a ten-foot by ten-foot room, kept completely dark to optimize the technician's ability to use the equipment. (Def.'s SOMF [20], ¶ 9). On or about March 15, 2004, plaintiff's supervisor, Mr. Michael Marcus, spoke to plaintiff regarding Marcus's observations, and the observations of other managers, that plaintiff appeared to be sleeping on the job. (Def.'s SOMF [20], ¶ 18). During that conversation, plaintiff claimed that he was not asleep but rather thinking about personal matters with his eyes closed. (Def.'s SOMF [20], ¶ 19). Plaintiff later admitted to Dr. Muhammad Shibli that he had fallen asleep at work on several occasions. (Pl.'s Opp'n [22], ¶ 21; Def.'s SOMF [20], ¶ 21). According to Team, on or about April 22, 2004, Mr. Marcus informed plaintiff that management was concerned about plaintiff's apparent sleeping on the job and instructed him to make a medical appointment to determine what was causing plaintiff to fall asleep at work. (Def.'s SOMF [20], ¶ 23). However, plaintiff stated in his deposition that he went for a medical evaluation of his volition, without being prompted to do so by Mr. Marcus. (Def.'s Mot. [20], Ex. B, 97). Plaintiff used a combination of sick leave and annual leave for the time needed to obtain a medical evaluation. (Def.'s SOMF [20], ¶ 25).

On or about May 7, 2004, plaintiff returned to work with a note from Dr. Reer Zonozi, dated May 5, 2004, that plaintiff had been diagnosed with sleep apnea and needed further sleep studies. (Def.'s SOMF [20], ¶ 27). Upon returning to work at Team, plaintiff was assigned to work in the intake department, where he was initially assigned upon being hired, because the

management thought that the busier atmosphere of the intake department might be less conducive to plaintiff's falling asleep. (Def.'s SOMF [20], ¶ 34, 35). According to Team, on May 19 and May 20, 2004, plaintiff's supervisor in the intake department, Mr. Vernon Herald, observed plaintiff asleep during his shift because he saw that plaintiff's eyes were closed and heard plaintiff breathing heavily. (Def.'s SOMF [20], ¶ 36, 37). However, plaintiff asserts that he visited Dr. Zonozi's office on May 19, 2004 at 1:00pm and took off from work on May 20, 2004. (Pl.'s Opp'n [22], ¶ 37, Ex. A). Team formally terminated plaintiff on May 28, 2004. (Def.'s SOMF [20], ¶ 38).

On June 9, 2004, plaintiff went to a sleep clinic at Providence Hospital and was given a continuous positive airway pressure ("CPAP") device to treat his sleep apnea. (Def.'s SOMF [20], ¶ 39). Plaintiff's CPAP machine temporarily relieves the symptoms of sleep apnea as long as it is used but it is a treatment, and not a cure, for the condition. (Pl.'s Opp'n [22], ¶ 40). Because the airway hose of the CPAP machine is punctured, plaintiff asserts that he no longer has use of the device. (Pl.'s Opp'n [22], ¶ 41).

## DISCUSSION

### I. Applicable Law

According to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate, in fact required, where no genuine issue of material fact exists. *Id.* at 323. Only facts that "might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the party moving for summary judgment to show that there is "an absence of evidence supporting the non-moving party's case." *Celotex*, 477 U.S. at 325. Once the moving party has met this burden, the burden shifts to the non-moving party to proffer specific facts showing that there are genuine disputed issues of fact that must be resolved at trial. *See* Fed. R. Civ. P. 56(e); *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, a "mere scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Opposition to summary judgment "must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial." *Hayes v. Shalala*, 902 F. Supp. 259, 263 (D.D.C. 1995). The Court is authorized to weigh the evidence at the summary judgment stage in order to determine whether there is sufficient evidence for a reasonable fact-finder to return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 249-250.

To establish a claim of discrimination under the Americans with Disabilities Act ("ADA"), a plaintiff must show that he: (1) had a disability withing the meaning of the ADA; (2) was otherwise qualified to perform the essential functions of the position with or without reasonable accommodation; and (3) was discharged because of his disability. *See Weigert v. Georgetown Univ.*, 120 F. Supp. 2d 1, 6 (D.D.C. 2000). To establish a disability within the meaning of the ADA, a plaintiff must show that he: (a) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) has a record of
4

such an impairment; or (c) has been or is regarded as having such an impairment. *See* 42 U.S.C. § 12102(2)(A)-(C). The Supreme Court has held that on the issue of whether an individual is "substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Ky., v. Williams,* 534 U.S. 184, 198 (2002). The disability must also be permanent or long-term to be considered "substantially limiting." *See id.*

## II.  Analysis

### A. Motion for Summary Judgment

Applying the legal standard for summary judgment to the applicable law under the Americans with Disabilities Act, this Court cannot grant summary judgment to the defendant in this case if an issue of material fact remains open on one of the elements of plaintiff's *prima facie* claim. It is clear to this Court that a genuine issue of material fact does exist in this case which precludes summary judgment at this stage. The defendant has not shown that there is no evidence that plaintiff had a disability under the ADA because a question of fact exists as to whether sleep apnea would "substantially limit" plaintiff's major life activities.[1] A reasonable fact-finder could find that sleeping as a result of sleep apnea would be a limitation that "prevents or severely restricts the [plaintiff] from doing activities that are of central importance to most

---

[1] This Court is not fully aware of the specific aspects of sleep apnea as a medical condition and its effect on plaintiff's abilities to perform his duties. Sleep apnea (or "apnoea") is "the cessation of breathing for ten seconds or more" during sleep and can be caused by either "a failure of the physiological drive to breathe" or an physical obstruction of the airway. BLACK'S MEDICAL DICTIONARY, 569 (Gordon Macpherson, ed., 40th ed. 2004). At this juncture, without expert medical testimony regarding plaintiff's condition, there is an insufficient basis for summary judgment.

people's daily lives." *Toyota Motor Mfg., Ky., v. Williams*, 534 U.S. 184, 198 (2002).

It is difficult to establish a *prima facie* claim of discrimination under the ADA and establish that the plaintiff is both substantially limited in performing major life activities and able perform the essential functions of the job, with or without reasonable accommodations. However, the defendant has not shown that plaintiff *cannot* establish both of these seemingly contradictory requirements and therefore, it is this Court's obligation to give him that opportunity.  The defendant argues that plaintiff cannot perform the essential functions of his job because he cannot stay awake but it could be argued with equal force that the inability to stay awake substantially limited plaintiff in his major life activities, and therefore, he has a disability under the ADA, because it is obviously impossible to complete many major life activities while one is asleep.

Another question of fact exists as to whether plaintiff's condition was permanent or long-term, as required under the definition of "substantially limiting", or treatable, and therefore, temporary and not a disability at all.  The defendant suggests that because plaintiff did not have any further symptoms of his sleep apnea after receiving treatment from the CPAP machine, that his condition was not permanent or long-term and need not fall under the rubric of the ADA. (Def.'s Mot. [20], ¶ 40, 41).  However, plaintiff asserts that the CPAP machine only temporarily relieved his symptoms and it is also unclear how the machine affected his condition at work because he only received the machine after he had already been terminated.  (Pl.'s Opp'n [22], ¶ 40).

Importantly, the defendant's own actions prevented a resolution of plaintiff's diagnosis because he was fired *after* he returned to work with a note from Dr. Zonozi who diagnosed his sleep apnea but *before* he could fully discern the extent of his condition and any treatments or cures that might be available, such as the CPAP machine. (Def.'s Mot. [20] ¶ 27-41). Therefore, there is also a question of material fact as to whether plaintiff could have performed the essential functions of the job with or without some reasonable accommodation at work because the full extent of his condition, and its ramifications for his work and life, were not yet known. The defendant cites *Kalekiristos v. CTS Hotel Management Corp.*, for the proposition that a plaintiff suing under the ADA must provide documentation of the existence of a disability during the time of employment and not following termination because allowing for the production of documentation after termination would render the requirement of a physical impairment meaningless and could hold an employer liable for a disability of which it was not aware. *See* 958 F. Supp. 641, 657 (D.D.C. 1997); (Def.'s Mot. [20], 10). However, it is important to note in this case, that the defendant fired plaintiff before he was able to obtain the proper medical documentation to determine whether he had a disability or not and therefore, the questions of whether he in fact had a disability and whether it could have been reasonably accommodated remain open.

While the defendant is correct in arguing that plaintiff cannot simply deny previous testimony or previously undisputed facts to create an issue of material fact as a basis for a denial of summary judgment, a genuine issue of material fact exists as to plaintiff's presence at work on May 19, 2004, when Mr. Vernon Herald allegedly saw plaintiff asleep at his work station. (Def.'s SOMF [20], ¶ 37). This incident, along with another incident on May 20, 2004 of

7

plaintiff's sleeping on the job, was the basis for his termination on May 28, 2004. (Def.'s Mot. [20], Ex. 4). Plaintiff's time sheet, included with the defendant's motion [20] for summary judgment, indicates that plaintiff was on sick leave on May 19, 2004 and did not come to work on that day. (Def.'s Mot. [20], Ex. 2). Plaintiff also asserts that he was not present at work on May 19, 2004 and included a bill from an office visit to Dr. Zonozi on that day. (Pl.'s Opp'n [22], Ex. A, B). Therefore, a genuine issue of material fact exists as to whether plaintiff was present at work on May 19, 2004 and was therefore actually observed sleeping on the job, which was a stated reason for his termination.

In light of the genuine issues of material fact that exist in this case, defendant Team's motion for summary judgment [20] will be denied.

**B. Motion for Court-Appointed Counsel**

On June 1, 2006, this Court granted plaintiff's attorney's motion [9] to withdraw. On July 31, 2006, plaintiff filed a motion [13] for court-appointed counsel which was denied in an Order [17] of this Court. At this time, after considering all the motions in this case, specifically the defendant's motion [20] for summary judgment, plaintiff's opposition [22], and the defendant's reply [23], this Court finds that there are sufficient grounds to warrant the appointment of counsel for plaintiff.

Generally, plaintiffs in civil cases do not have a constitutional or statutory right to appointment of counsel. *See Ray v. Robinson*, 640 F.2d 474, 477 (3d Cir. 1981). However, the decision to appoint lies within the discretion of the trial judge. *See Poindexter v. FBI*, 737 F.2d 1173, 1179 (D.C. Cir. 1984). In determining whether to appoint counsel for plaintiff in a civil

case, "a court ought to consider the following factors: (1) the ability of the plaintiff to afford an attorney; (2) the merits of the plaintiff's case; (3) the efforts of the plaintiff to secure counsel; and (4) the capacity of the plaintiff to present the case adequately without aid of counsel." *Id.* at 1185. *See also Doyle v. District of Columbia*, 1997 U.S. Dist. LEXIS 15019, *3-4 (D.D.C. 1997).

In the instant case, plaintiff has demonstrated a sufficient likelihood of success on the merits as demonstrated by the facts of the case and plaintiff's opposition [22]. As this Court observed in its previous Order [17] originally denying the appointment of counsel to plaintiff, "inability to pay for counsel is alone insufficient to warrant court appointment of counsel." (Order, [17]). However, after review the facts and circumstances of the case, it is clear to this Court that in the interests of justice, it would be unfair to require plaintiff to proceed with his claim *pro se*. Plaintiff's medical condition, which is at the heart of this case, and which the defendant argues prevents him from performing the essential functions of his job duties, would also prevent him from representing himself adequately. Plaintiff must be awake and alert at all times to be able to form legal arguments, respond to arguments raised in the defendants' case, examine witnesses, and make proper objections. Therefore, plaintiff's diagnosed sleep apnea, and the exhibited symptoms of sleeping during the day, would hinder his ability to represent himself adequately. Plaintiff's case is sufficiently complex, in that it deals with medical testimony and will involve interviewing and questioning of doctors, to warrant court-appointed counsel. In addition, "Team is not opposed to the Court appointing [plaintiff] Taylor an attorney if the Court determines that Taylor qualifies for such an appointment." (Def.'s Response [15], 1). Therefore, for these reasons, the Court will grant plaintiff's second motion [16] for

appointment of counsel.

### C. Motion to Compel Documents

Plaintiff's motion [18] to compel documents from the defendant will be denied as moot because the defendant has offered evidence that these documents were in fact sent to plaintiff. Plaintiff requested a complete set of documents that had been sent to plaintiff's former counsel as well as plaintiff's work attendance records from December 2003 through May 28, 2004. (Pl.'s Mot. [18], 2). The defendant's counsel sent plaintiff the requested documents that had been sent to plaintiff's former counsel the same day that plaintiff had called the defendant's counsel to request them and attached a delivery confirmation for verification. (Def.'s Resp. [19], 2, Ex. 1). In addition, as stated in the defendant's response, "Team obtained Taylor's attendance information (which had never been the subject of a Rule 34 Request for Production of Documents) from its off-site storage location and sent it to him via Federal Express on November 30, 2006." (Def.'s Resp. [19], 2). This Court takes these statements to be true and in light of no opposing evidence or assertions from plaintiff that he never received the second shipment of documents containing his attendance records, plaintiff's motion [18] to compel production of documents will be denied as moot.

### CONCLUSION

For the reasons stated herein, this Court shall deny the defendant's motion [20] for summary judgment. In addition, this Court shall grant plaintiff's second motion [16] for court-appointed counsel and this Court shall deny as moot plaintiff's motion [18] to compel production of documents.

A separate order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, April 23, 2007.